UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TROY ANTHONY BREAUX                DOCKET NO. 6:13-cv-02901

VERSUS                             JUDGE HAIK

CAROLYN W. COLVIN,                 MAGISTRATE JUDGE HANNA
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

### BACKGROUND

The claimant, Troy Anthony Breaux, was born on January 16, 1995.[1]  In

October 2010, when the claimant was fifteen years old, an application for

Supplemental Security Income benefits was filed on his behalf, which alleged a

disability onset date of May 15, 1995[2] due to seizures.[3]

---

[1]     Rec. Doc. 5-1 at 52, 95, 150.

[2]     Rec. Doc. 5-1 at 150.

[3]     Rec. Doc. 5-1 at 106.

The record reveals that the claimant has experienced seizures since he was approximately one year old.[4]  An EEG performed when he was eight years old was normal,[5] and a neurological examination performed by Dr. Anthony S. Ioppolo when he was seventeen years old was also "completely normal."[6]

The claimant has been treated for his seizure disorder by Dr. Dan Elfret, Dr. John Kevill, and Dr. John Flatt.  All of them have prescribed medications in an effort to control the seizures.   In March 2009, Dr. Flatt diagnosed the claimant with generalized epilepsy.[7] At that time, the claimant had gone a year without a seizure.[8]

In February 2010, Dr. Flatt noted that the claimant was off his medication and had not had any seizure activity in the prior month.[9]  In August 2010, however, his seizures returned, and Keppra was prescribed by Dr. Flatt.[10]  In September 2010, Dr. Flatt confirmed that he has diagnosed the claimant with "epilepsy NOS" and has

---

[4]     Rec. Doc. 5-1 at 361.

[5]     Rec. Doc. 5-1 at 257.

[6]     Rec. Doc. 5-1 at 383.

[7]     Rec. Doc. 5-1 at 328.

[8]     Rec. Doc. 5-1 at 251.

[9]     Rec. Doc. 5-1 at 327.

[10]    Rec. Doc. 5-1 at 366.

prescribed Keppra XR 1000 mg daily to treat that condition.[11]  In April 2011, Dr. Flatt diagnosed the claimant with an essential tremor.[12]

On January 8, 2011, the claimant was examined by Dr. Toyin Bamgbola at the request of the Louisiana state disability services.[13]  At that time, the claimant was fifteen years old.  The history provided to Dr. Bamgbola included that the claimant is "a little bit slow" but "improving academically."  Dr. Bamgbola noted that the claimant had a normal mental status, could follow simple and complex directions, had a mild lack of coordination with finger-to-nose testing that the physician attributed to his anti-convulsant medication but an otherwise normal neurological status. According to Dr. Bamgbola, the claimant "had good intellectual interaction and mental status was normal."

In January 2011, it was determined that the claimant is not disabled.[14]  The claimant requested a hearing,[15] which was held on November 16, 2011 before

---

[11]     Rec. Doc. 5-1 at 347.

[12]     Rec. Doc. 5-1 at 343.

[13]     Rec. Doc. 5-1 at 337-339.

[14]     Rec. Doc. 5-1 at 94, 106.  Apparently, an earlier application for SSI was also filed, since the record contains a notice, dated December 29, 2009, before the date of the current application, finding that the claimant is not eligible for SSI.  Rec. Doc. 5-1 at 99.

[15]     Rec. Doc. 5-1 at 112.

Administrative Law Judge ("ALJ") John Antonowicz.[16]  At that time, the claimant was sixteen years old.  At the conclusion of the hearing, the ALJ kept the record open for the submission of additional evidence, and documents that were submitted after the hearing are now a part of the record.

On February 6, 2012, the claimant was examined by Dr. Anthony S. Ioppolo, a neurologist, at the request of the state disability determination agency.[17]  The claimant reported to Dr. Ioppolo that he was having seizures once or twice a month. Dr. Ioppolo found that he had a seizure disorder that was under better control with his current medication, normal cognition, and normal motor function.

On February 28, 2012, the claimant was examined by Dr. Alfred E. Buxton, a psychologist, at the request of Disability Determination Services.[18]  Dr. Buxton was told that the claimant had been home schooled for two years at the seventh grade level and that he does not do well academically.  He was also told that the claimant had previously had seizures about once a month but for the past ten months had not had a seizure since being placed on a new medication.  The claimant's mother explained to Dr. Buxton that he has a chronic mild tremor that she believes was inherited from

---

[16]     Rec. Doc. 5-1 at 47.

[17]     Rec. Doc. 5-1 at 383-388.

[18]     Rec. Doc. 5-1 at 397-399.

-4-

his father's side of the family, and Dr. Buxton opined that "perhaps it is a benign familial tremor."  Dr. Buxton assessed the claimant's intellect as dull normal/low average and found that his "[l]evel of competency is within at least a marginally acceptable range of calendar age expectancy."  He also found that, in addition to a seizure disorder under fair control with anti-convulsant medication and a mild chronic tremor, the claimant has untreated Attention Deficit Hyperactivity Disorder ("ADHD.")  Dr. Buxton assigned a score of 60 over the past ten months on the Global Assessment of Functioning ("GAF") scale.  As the Fifth Circuit has noted, "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'"[19]  A GAF score of 60 is on the borderline between mild and moderate symptoms.[20]

On April 3, 2012, the claimant was examined by Dr. Lawrence S. Dilks, a clinical neuropsychologist.[21]  Dr. Dilks was told that the claimant has two to three seizures per month, the most recent one being a mild seizure on March 28.  The testing performed by Dr. Dilks showed that the claimant's thought processing was

---

[19]     *Boyd v. Apfel*, 239 F.3d 698, 701 n.2 (5th Cir. 2001), citing American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th ed. 1994) ("DSM–IV").

[20]     DSM-IV at 32.

[21]     Rec. Doc. 5-1 at 402-411.

slow, his fund of knowledge was weak, and his intelligence was in the low borderline or high mild range.  He found that the claimant's insight was very poor and his judgment and reasoning capabilities were weak.  Testing revealed a full scale IQ of 70.  Dr. Dilks found the presence of a global cognitive impairment, general functioning in the borderline range, a marked deficiency in language dysfluency and word generation capability.  He also found that the claimant is "an individual whose current level of adaptive and social functioning [is] in the moderately impaired range."  In summary, Dr. Dilks's diagnoses at Axis I were developmental disorder, NOS, moderate - severe; ADHD, inattentive type, moderate; tremor, complex; sleep disorder, early insomnia; and disorder of written expression.  At Axis II, Dr. Dilks found borderline intellectual functioning.  He assigned a GAF score of 50, which is on the borderline between moderate and serious symptoms.[22]

The ALJ rendered an unfavorable decision on June 29, 2012.[23]  The claimant requested review of the ALJ's ruling,[24] but the Appeals Council denied review.[25]  Accordingly, the ALJ's decision of June 29, 2012 is the Commissioner's final

---

[22]    DSM-IV at 32.

[23]    Rec. Doc. 5-1 at 14.

[24]    Rec. Doc. 5-1 at 10.

[25]    Rec. Doc. 5-1 at 5.

decision for purposes of judicial review.[26]  The claimant now argues that his seizure disorder and developmental delays qualify him for Social Security benefits.

## ASSIGNMENT OF ERRORS

The claimant argues that the Commissioner's ruling is erroneous for two reasons:  (1) because the ALJ improperly evaluated whether his impairments are the functional equivalent of a listed impairment; and (2) because the ALJ failed to give proper weight to the opinions of neuropsychologist Dr. Lawrence Dilks.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[27]  If the Commissioner's findings are supported by substantial evidence and the decision comports with relevant law, the decision must be affirmed.[28]  Substantial evidence is more than a mere scintilla and less than a preponderance.[29]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or

---

[26]      42 U.S.C. § 405(g).

[27]      42 U.S.C. § 405(g); *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d at 704.

[28]      *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[29]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

medical findings support the decision.[30]   Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[31] The court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[32]   A claimant has the burden of proving his disability.[33]

### CHILDHOOD DISABILITY BENEFITS

An individual under age eighteen is considered to be disabled if he has a medically determinable physical or mental impairment resulting in marked and severe functional limitations that is expected to result in death or has lasted or is expected to last for a continuous period of not less than twelve months.[34]

A three-step process is utilized to determine whether a person under the age of eighteen is disabled.[35]   At step one, it must be determined whether the claimant is engaging in substantial gainful activity.   A child claimant who is engaging in

---

[30]   *Boyd v. Apfel,* 239 F.3d at 704.

[31]   *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[32]   *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[33]   See *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

[34]   42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906.

[35]   20 C.F.R. § 416.924; *Lopez v. Barnhart*, 176 Fed. App'x 618, 619 (5th Cir. 2006).

substantial gainful activity will be found not disabled regardless of his medical condition, age, education, or work experience.[36]

At step two, it must be determined whether the claimant has a medically determinable impairment or a combination of medically determinable impairments that is severe. A child found to have a slight abnormality or a combination of slight abnormalities that cause no more than minimal functional limitations will be found not disabled.[37]

At step three, it must be determined whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing or that functionally equals a listing.[38] When the impairments do not meet or equal a listed impairment, the Commissioner will evaluate the functional limitations caused by the child's impairments to determine whether they are disabling.[39]

## DISCUSSION

In his ruling, the ALJ explained the required three-step sequential process for determining whether the claimant is disabled. At step one, the ALJ found that the

---

[36]      20 C.F.R. § 416.924(b).

[37]      20 C.F.R. § 416.924(c).

[38]      20 C.F.R. § 416.972.

[39]      20 C.F.R. § 416.926a.

claimant has not engaged in substantial gainful activity since his application date of September 10, 2010.[40]  This finding is supported by the record, which contains no evidence that the claimant has ever engaged in significant physical or mental activities for pay or profit[41] at any time.  The claimant does not challenge this finding.

At step two, the ALJ found that the claimant has the following severe impairments:  seizure disorder, Attention Deficit Hyperactivity Disorder, benign familial tremor, and borderline intellectual functioning.[42]  This finding is supported by substantial evidence in the record, and is not challenged by the claimant.

At step three, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment or that functionally equals the severity of a listing.  While the ALJ stated that he considered Listings 111.02, 111.03, 112.02, 112.11, and 112.05, he did not compare the claimant's symptoms or the opinions of his physicians and evaluators to the criteria of any listing.  Instead, he immediately moved to a discussion of whether the claimant has an impairment or combination of impairments that are functionally equivalent to a listed impairment.  Thus, in his ruling, the ALJ listed the necessary

---

[40]     Rec. Doc. 5-1 at 17.

[41]     20 C.F.R. § 416.972.

[42]     Rec. Doc. 5-1 at 17.

analytical steps but failed to properly analyze the information found in the record concerning steps two and three.  However, the claimant does not argue that he meets a listing.  Accordingly, this error is harmless.  The claimant does contest the ALJ's conclusion that his impairments do not functionally equal the severity of a listing impairment, and he argues that the ALJ reached that conclusion by failing to give proper weight to the opinions of neuropsychologist Dr. Lawrence Dilks.

### A.   DO THE CLAIMANT'S IMPAIRMENTS FUNCTIONALLY EQUAL LISTED IMPAIRMENTS?

At step three of the required analysis, the ALJ concluded that the claimant "does not have an impairment or combination of impairments that functionally equals the severity of the listings."[43]  A claimant's impairments functionally equal the listings if they are of listing-level severity.  An impairment is deemed functionally equivalent to a listed impairment if it results in an extreme limitation in one domain of functioning or if it results in marked limitations in two domains.[44]  Functional equivalence is evaluated in six domains:  acquiring and using information, attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself, and health and well-being.[45]  When

---

[43]        Rec. Doc. 5-1 at 17.

[44]        20 C.F.R. § 416.926a(a).

[45]        20 C.F.R. § 416.926a(b)(1).

assessing functional limitations, all relevant factors are considered, including but not limited to (1) how well the claimant can initiate and sustain activities, how much extra help the claimant needs, and the effects of structured or supportive settings; (2) how the claimant functions in school; and (3) the effects of the claimant's medications or other treatment.[46]

An extreme limitation exists when the impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities.[47] Day-to-day functioning may be seriously limited when an impairment limits only one activity or when the interactive and cumulative effects of various impairments limit several activities.[48]  An extreme limitation is equivalent to standardized test scores that are at least three standard deviations below the mean.[49]

An impairment is marked when it seriously interferes with the claimant's ability to independently initiate, sustain, or complete activities.[50]  A marked limitation is more than moderate but less than extreme.[51]  A marked limitation is equivalent to

---

[46]      20 C.F.R. § 416.926a(a).

[47]      20 C.F.R. § 416.926a(e)(3).

[48]      20 C.F.R. § 416.926a(e)(3).

[49]      20 C.F.R. § 416.926a(e)(3).

[50]      20 C.F.R. § 416.926a(e)(2).

[51]      20 C.F.R. § 416.926a(e)(2).

standardized test scores that are at least two, but less than three standard deviations below the mean.[52]

The primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant.[53]

In this case, the ALJ found that the claimant has less than marked limitation in all six domains.  The claimant did not clearly articulate his objections to the ALJ's findings in the six relevant areas, and he did not point out evidence in the record supporting his contention that he has marked or severe limitations sufficient to support a finding that he is disabled.

With regard to acquiring and using information, the claimant did not point to any evidence in the record that establishes that his academic achievements are two or three standard deviations below the norm.  The claimant acknowledges that the ALJ found that he was diagnosed with ADHD, has borderline intellectual functioning, has a seizure disorder, and has experienced difficulty with written language and reading comprehension, but he criticized the ALJ's comparison of his ability to read at a third grade level with the Social Security Administration's definition of illiteracy.  He also criticized the ALJ's reliance on the childhood disability evaluation form completed

---

[52]     20 C.F.R. § 416.926a(e)(2).

[53]     20 C.F.R. § 416.912(c).

by Dr. Gerald Dzurik in developing his finding with regard to this domain.  But the ALJ actually gave Dr. Dzurik's opinions little weight.   More importantly, the claimant pointed to no evidence whatsoever that supports a conclusion that the claimant has a marked or extreme impairment in this domain.

Similarly, the claimant pointed out no evidence in the record that supports a finding that he has a marked or extreme impairment in the domain of attending and completing tasks.  The mere fact that he was diagnosed with ADHD is insufficient to establish such a degree of functional impairment.

With regard to the domain of interacting and relating with others, the claimant refers to Dr. Dilks's report.  But Dr. Dilks found the claimant's social functioning to be moderately impaired.   A moderate impairment is less severe than a marked or extreme impairment.

The claimant does not dispute the ALJ's finding with regard to the domain of moving about and manipulating objects.

The claimant pointed out no evidence in the record supporting a finding that the claimant has a marked or extreme impairment in the domain of caring for yourself.

Finally, with regard to the domain of health and physical well-being, the claimant points out that Dr. Dilks found that he has a moderate to severe

-14-

developmental disorder and recommended that he have a personal care attendant for one hour per day. But there is no direct correlation between the cited finding and recommendation and the evaluation of the claimant's functioning in this domain. The ALJ rejected Dr. Dilks's recommendation for attendant care on the basis that none of the claimant's treating physicians had made a similar recommendation. This was a legitimate reason for discounting Dr. Dilks's opinion. As a consultative examiner, Dr. Dilks did not establish the same type of relationship with the claimant that treating physicians establish with their patients. Because of the nature of such relationships, a treating physician's opinion is generally afforded more weight than that of a consulting examiner. "[O]rdinarily, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."[54] Also, "[t]he ALJ as factfinder has the sole responsibility for weighing the evidence"[55] and has the responsibility to resolve conflicts in the evidence.[56]

Ultimately, the claimant did not cite any specific medical evidence in the record to demonstrate that he has marked or severe limitations in any of the six

---

[54]    *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985)).

[55]    *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

[56]    *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

functional domains.  Accordingly, the undersigned finds that his argument that the ALJ failed to adequately evaluate his functioning in the six relevant categories lacks merit.

**B.      WERE DR. DILKS'S OPINIONS IMPROPERLY WEIGHED?**

The claimant's second argument is that the ALJ "completely disregarded the comprehensive neuropsychological examination and the psychological impairments revealed by [Dr Dilks's] examination."[57]  This is simply not the case.  The ALJ carefully summarized Dr. Dilks's report but noted that Dr. Dilks is not the claimant's treating physician and found his recommendation of a personal assistant was undermined by the lack of such a recommendation from the claimant's three treating physicians, Dr. Flatt, Dr. Elfert, and Dr. Kevill.  As noted above, the ALJ had legitimate reasons for not giving Dr. Dilks's opinions controlling weight.

Furthermore, Dr. Dilks did not opine that the claimant is severely impaired in one or more of the six domains or markedly impaired in two or more of the domains. The claimant argues that Dr. Dilks's finding that he has a marked deficiency in language dysfluency and word general capability supports a finding of marked limitation in at least five domains.[58]  But language dysfluency is not one of the six

---

[57]      Rec. Doc. 7 at 8.

[58]      Rec. Doc. 7 at 9.

domains to be evaluated, and the claimant does not explain how a deficiency in that category translates to an impairment in the six domains that must be evaluated.  The claimant further argues that a "careful reading of Dr. Dilks' testing and observations identifies multiple deficiencies in understanding, comprehension, interacting with others, all of which. . . established a marked limitation in almost every domain."[59] But Dr. Dilks did not opine that the claimant has marked limitations in any domain that must be evaluated in the analysis prescribed by the Social Security regulations. Similarly, the record contains no opinion from any other examiner or treating physician that the claimant has marked or severe impairments.  Furthermore, the claimant provided no authority for his contention that the results of the testing conducted by Dr. Dilks can be equated with marked limitations in any of the domains that must be evaluated.  Thus, no medical or legal support for the claimant's argument was presented.  Accordingly, the undersigned finds that this argument lacks merit.

## CONCLUSION AND RECOMMENDATION

There is no evidence that the ALJ applied inappropriate legal standards in ruling on this case, and the ALJ's decision is based on substantial evidence in the record.  The claimant failed to prove that he is disabled.  Accordingly,

---

[59]     Rec. Doc. 7 at 9.

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and that this matter be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 25th day of November 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

DATE: __11/26/2014__
BY: _____EFA_____
TO: _____RTH_____
         pj

-18-